UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:08CV530

ANGELA MOULTRIE                                                                                    PLAINTIFF

VS.

MICHAEL J. ASTRUE,
       Commissioner of Social Security                                                DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Angela Moultrie ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

## PROCEDURAL HISTORY

On August 17, 2005, Claimant filed application for supplemental security income payments, alleging that she became disabled as of June 1, 1997. After a hearing, Administrative Law Judge Peter Edison ("ALJ") determined that claimant's gout, hypertension, heart problems, fibroids, obesity and depression were severe impairments that prevented her from performing any of her past relevant work. The ALJ further found that she retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy. This became the final decision of the Defendant when the Appeals Council denied review on August 6, 2008.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative

proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

Plaintiff argues that the ALJ committed legal error in failing to properly evaluate the impact of her obesity. While "obesity" is no longer listed separately in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the regulations clearly require evaluation of the functional impact of obesity. Plaintiff contends that the ALJ's evaluation was too abbreviated to meet the standards of Social Security Ruling 01-01p, which requires consideration of the extent (if any) to which obesity complicates other conditions such that it has an impact on the claimant's residual functional capacity ("RFC").

RFC is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. §404.1545(a)(1). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden or proof in establishing his or her RFC, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999).

The RFC describes "the claimant's residual abilities or what a claimant can do, not what

2

maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard, 276 F.3d at 240. "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." Yang v. Comm'r of Soc. Sec., No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D.Mich. July 14, 2004). Howard does not stand for the proposition that all impairments deemed "severe" in step two must be included in the hypothetical. The regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms. 20 C.F.R. § 404.1545(e).

Accordingly, the bottom line concern is not what portion of a functional impairment is attributable to obesity, but rather what the plaintiff's capacity for work functions is once other impairments, pain, and other problems, such as obesity, are taken into account. Based on these requirements, the Court cannot agree that the ALJ erred. In determining RFC, the ALJ took into account the limitations identified in the medical records. Significant among these was the opinion of Dr. Akaydin, an examining consultant, who found full range of motion, good grip and ambulation, flexibility, fully intact upper and lower extremity function, etc.; nonetheless, noting her obesity, he opined that she should "probably avoid those forms of employment that require continuous/prolonged standing, walking, and stair climbing until she has lost a sufficient amount of weight." Tr. 269. This limitation, which is essentially attributable to claimant's obesity, is incorporated in the ALJ's RFC finding. Plaintiff has not pointed to any medical evidence in support of her claim that her obesity combines with other impairments to create other forms of functional impairment. There is no error.

Next, plaintiff contends that the ALJ erred in evaluating the credibility of her testimony.

It is well-established that resolving conflicts in the evidence and deciding questions of credibility are matters within the province of the ALJ. <u>Wright v. Massanari</u>, 321 F.3d 611 (6th Cir. 2003). SSR 96-7p provides instruction on credibility evaluation as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

20 C.F.R. § 404.1529(c) describes the kinds of evidence, including the factors below, that the adjudicator is to consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1) Daily activities;

2) The location, duration, frequency, and intensity of pain or other symptoms;

3) Precipitating and aggravating factors;

4) The type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms;

5) Treatment, other than medication, received for relief of pain or other symptoms;

6) Any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

In this case, the medical evidence established the existence of impairments capable of producing the types of symptoms of which Ms. Moultrie complained; however, because such symptoms as pain and the effects of mood disorders are very subjective matters, medical evidence

typically cannot establish the intensity, the frequency, or the persistence of those symptoms. As Ms. Moultrie testified that her symptoms were of disabling intensity, frequency and persistence, the extent to which her testimony may be relied upon to establish the functional impact of the symptoms is critical.

The ALJ thoroughly examined all medical evidence as it might bear on Ms. Moultrie's claims of disabling subjective symptoms, devoting two and one half pages of the decision to this process. He rejected Ms. Moultrie's claims of inability to sleep, to attend to personal care, or to manage her own finances (claims made to examining consultant Dr. Lynch), pointing to Dr. Lynch's observations of her good grooming and of her functional capacity. He also noted that although she told Dr. Lynch that she never bathes, she testified that she bathes daily. Tr. 18. Rejecting claims of persistent and debilitating pain, he pointed to Dr. Akaydin's observation that his examination was essentially within normal limits other than her obesity (discussed above). Tr. 16. The ALJ also pointed to various treatment records indicating full range of motion, some mild degenerative changes in the left knee, and improvement in her mood. Tr. 17. The Court concludes that the ALJ carefully considered the record in making his credibility determination, and there is no error.

An order in conformity has this day entered.